Janet Y. Thomas
Plaintiff, *pro, se*
1181 Nixon Drive # 1057
Moorestown, NJ 08057
dr.thomas4020779@gmail.com

## UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF COLUMBIA
### 333 Constitution Ave, N.W.
### Washington, D.C. 20001

| | | |
|---|---|---|
| Janet Thomas<br>Plaintiff, *pro se*<br>1181 Nixon Drive, #1057<br>Moorestown, NJ 08057<br>v.<br>Alan Lescht, Defendant<br>Alan Lescht and Associates<br>1825 K Street, NW<br>Washington, DC<br><br>Jack Bradley Jarrett, III, Defendant<br>4830 31st Street South<br>Suite B<br>Arlington, VA 22206 | **Case#:**<br><br>**Docket #:** | Case: 1:23-cv-03528<br>Assigned To : Chutkan, Tanya S.<br>Assign. Date : 11/27/2023<br>Description: Pro Se Gen (F-Deck)<br><br>**Bench Trial Requested** |

## NATURE OF COMPLAINT

This is a case of legal malpractice in that the Plaintiff retained the services of Alan Lescht and Associates, proclaimed experts on federal employment law, to represent her in three federal Title VII Civil Rights claims to the Equal Employment Opportunity Commission (EEOC) against the United States Agency for International Development (USAID). Mr. Jack Jarrett, senior counsel was assigned to the case. Mr. Jarrett worked under the supervision of Alan Lescht, managing director. During the process, Mr. Jarrett worked with the agency attorney to combine three claims into one case. Claim 1-(OCRD-004-19-F; EEOC 570-2020-00280X) was filed while

RECEIVED
NOV 27 2023
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Plaintiff was still employed at USAID for discrimination, hostile work environment and retaliation.  Claim 2- (OCRD-007-20-F; EEOC 570-2020-01065X) for wrongful discharge and retaliation. Claim 3- (OCRD-037-20-F; EEOC 570-2020-01594X) for retaliation against former employee.

Plaintiff charges that Jack Jarrett, under the direction of Alan Lesch and Associates committed negligence and breached his duty to provide competent and skillful representation. Working along with the USAID attorney, Mr. Jack Jarrett, reframed issues, misrepresented evidence, omitted a critical incidence and failed to argue Plaintiff's rights under the federal employment laws and USAID's tenure and employment management policies. Lastly, on the combined complaint, Mr. Jarrett's reframed specific issues to protect the actions of senior white male administrators when changed information, withheld information and omitted specific incidences.

## JURISDICTION

1.    A federal district court has original jurisdiction over civil actions that arise under a federal statute. This complaint is about legal malpractice of a Title VII Civil Rights employment case.  Federal courts have subject matter jurisdiction over claims involving Title VII issues. Therefore, this court has original jurisdiction to hear this civil action of malpractice involving a Title VII case.

2.    The defendants in this case are experts in employment discrimination law. The firm is located at 1825 K, Street, #750, NW Washington, D. C. Alan Lescht who is the managing shareholder and Jack Jarrett was senior counsel.

3. Plaintiff was an employee of USAID located in Washington, D.C. when she retained legal services from Alan Lescht and Associates. The claims arise from events that took place between September 2018 and November 2019 when the Plaintiff was an employee of USAID, demonstrating personal jurisdiction.

## PARTIES

4. Plaintiff, *pro, se,* Janet Thomas, was employed at USAID from 2015-2019 as a foreign service education officer. She was deputy director of the USAID Education Office at the U.S. Embassy in Abuja, Nigeria from May 2017-April 2019. She started her new assignment in Kabul, Afghanistan in August 2019. Her current mailing address is 1181 Nixon Drive, #1057, Moorestown, New Jersey 08057.

5. Defendant, Alan Lescht is managing shareholder of Alan Lescht and Associates, P.C. He is located at 1825 K. Street #750, NW Washington, District of Columbia 20006.

6. Defendant, Jack Jarrett was senior counsel at Alan Lescht and Associates, P. C. during the time of the Plaintiff retained services of the firm. He was the primary attorney appointed to the case. His current address is 4830 31st Street, South, Suite B. Arlington, Virginia 22206.

## STATEMENT OF FACTS

**Establishment of an Attorney Client-Relationship**

7. On or about, December 6, 2018, Plaintiff retained the services of Alan Lescht & Associates to assist in filing a Title VII, Equal Employment Opportunity Commission (EEOC) complaint of discrimination, hostile work environment and retaliation against the Agency. Attorney Jack Jarrett was assigned to the case. As a result, an attorney-client relationship was established.

8.  Plaintiff was terminated effective on November 2019. After her termination, Plaintiff filed two additional complaints. One for wrongful termination in retaliation for EEOC activity, which is a protected act under the Title VII Civil Rights Act (OCRD-007-20-F; EEOC 570-2020-01065X). The other (OCRD-037-20-F; EEOC 570-2020-01594X) for retaliatory acts against former employee. Mr. Jarrett advised the plaintiff that it would be best to combine the three claims into one case. Mr. Jarrett also stated that he would work with the agency's attorney to produce one complaint with all issues.

9.  Plaintiff paid Alan Lescht and Associates more than $11,000 in legal fees from October 2019 to October 2022.[1]

### Charge 1: Negligence in Duty of Care

10.  Mr. Jarrett was negligent and breached his duty to provide competent and skillful representation to Plaintiff. Alan Lescht & Associates holds themselves out as specialist in the area of employment law, specializing in federal law and government employees. Accordingly, the defendants were obligated to exercise the knowledge and skills ordinarily possessed by other specialist in this area of law. Plaintiff contends that the defendants breached their duty of care by reframing the case, misrepresenting issues and omitting critical incidences when combining the case. They also failed to apply the appropriate employment laws and agency policies that a reasonable attorney would argue based upon common knowledge and experience.

11.  As a result, the case dismissed on summary judgement by the administrative judge on July 21st 2021. This dismissal was upheld on appeal by the Office of Federal Operations on December 6, 2022.

---

[1] Plaintiff paid more than the stated amount in legal fees. However, she only has $11,000 in actual receipts.

12.  On the combined complaint, Mr. Jarrett wrote: *On April 2, 2019 "Complainant received a letter of admonishment that contained false claims and inaccurate and unfair statements. Complainant alleges that the following Agency actions constitute unlawful discrimination and harassment (non-sexual) based on her race (African American), and sex (female)"*

    a.  The issue was presented in the original claim as an act of retaliation for protected EEO activity and NOT discrimination. Mr. Jarrett reframed this issue and specifically highlighting the *"Complainant alleges that the following Agency actions constitute unlawful discrimination and harassment (non-sexual) based on her race (African American), and sex (female)."* (Sworn Statement, 1, Issue, 1, # 13 & 32-70).

    b.  The person who sent the letter of admonishment was a senior white male administrator. Mr. Jarrett reframed this issue.

13.  On the combined complaint, Mr. Jarrett wrote: *"In August 2018, to the present, Complainant's supervisor informed her that she would oppose her tenured position."*

    a.  The supervisor **DID NOT** state that she (the supervisor) was opposing Plaintiff's tenure. Plaintiff testified that the supervisor stated that the Mission Director (MD) notified her (the supervisor) that he (the MD) was in opposition to Plaintiff's tenure (see Sworn Statement 1, under Issue 2, questions103 -107).

    b.  This incident did not happen in August 2018. It was in October 2018. The supervisor documented the MD's allegations on a document that she sent to Plaintiff on October 4th 2018. Plaintiff submitted it as evidence. (Sworn Statement 1, Issue 1, # 3 par 2 & 70-72).

    c.    The person who stated that he would oppose Plaintiff's tenure was a senior white male administrator. Mr. Jarrett reframed this issue.

14.    On the combined complaint, Mr. Jarrett wrote: *"In August 2018, to the present, Complainant's supervisor continued to falsely document alleged performance concerns."*

    a.    Mr. Jarrett misrepresented this issue. He gave the EEOC the impression that Plaintiff's supervisor had been documenting performance concerns prior to August 2018. The supervisor had just started working with Plaintiff in August 2018. Therefore, there was no way that she could have *"continued to falsely document alleged performance concerns"* in August 2018.

    b.    Plaintiff had a commendable performance record within the agency prior to August 2018. Plaintiff provided documented evidence of her prior performance record.

15.    On the combined complaint, Mr. Jarrett wrote: *"On October 9, 2019, Complainant was notified that her employment was terminated with an effective date of November 8, 2019."*

    a.    The claim was filed as wrongful termination in retaliation for protected EEO activity. Mr. Jarrett presented the case as if Plaintiff was denied tenure for performance issues (Sworn Statement 2, Issue 1, # 30-32).

    b.    The facts are that the person responsible for sending Plaintiff an unwarranted letter of admonishment unlawfully terminated her (see Sworn Statement 2, Issue 1, # 30-31). Plaintiff was ordered back to Washington from her assignment in Afghanistan two days after she filed the official sworn statement with the Equal

Complaint, page. 6 of 13

        Employment Office (EEO). Plaintiff referenced the unwarranted admonishment as an example of retaliation in her testimony.

    c.    The person who unlawfully terminated Plaintiff was a senior white male administrator. Mr. Jarrett left this entire incidence off of the combined complaint.

16.    On the combined complaint Mr. Jarrett wrote: *"On February 20, 2020, Complainant learned that the Agency had placed derogatory information on her credit report on December 29, 2019, regarding a charge for a plane ticket"*

    a.    Plaintiff testified that this incident was an act of retaliation for EEO activity. The ticket was to attend a funeral for Plaintiff's brother. The mission director gave full approval back in 2018. Further, Plaintiff had already offered her personal credit card and suggested to the mission could use payroll deduction to pay for the ticket back in July 2018 (Sworn Statement 1, Issue 1, 21-22).

### Charge II:

### Failure to Apply the Relevant Federal Employment Laws and Policies

17.    Mr. Jarrett failed to exercise the legal skills and knowledge of a reasonably competent attorney with expertise in federal employment law. He failed to present the case with an understanding the employment rights of federal employees and the agency's legal obligations in regards to performance issues, due process and termination of a foreign service officer on a 5-year limit.

19.    USAID made the argument that the Plaintiff was terminated due to performance issues. Mr. Jarrett failed to make the argument that if this in fact was in fact the case, the agency violated

their own policy by terminating Plaintiff without due process. **ADS 464**, *Foreign Service Performance-Based Actions* allows for Performance Standards Boards (PBSs) to review the records of an officer who is recommended for tenure denial. Officers selected for review are allowed to present their case to the PBS before they make the final recommendation to the Tenure Board. Officers have 5-years to tenure. Plaintiff was only in year 4.

   a. The Performance Standards Board (PBS) sent Plaintiff a letter stating that they would like to review her case again in 2020 for extenuating circumstances before making their final recommendation. Plaintiff presented this letter to Mr. Jarrett during consultation and submitted it to the investigation with her 2nd sworn statement (Sworn Statement 2, Issue 1, #32). Mr. Jarrett did not mention this document in the combined complaint.

   b. Plaintiff was placed on administrative leave shortly after filing her sworn statement with the first claim. She was terminated 30-days later and not allowed to meet with the Board. Mr. Jarrett totally omitted this issue in the combined the complaint and never made the argument regarding denial of due process (Sworn Statement 2, Issue 1, #32).

20. Mr. Jarrett failed to mention in the complaint that USAID violated their own policy and procedures by terminating plaintiff due to unsubstantiated performance allegations. Agency policy requires a Performance Improvement Plan when there are creditable performance issues. The agency presented no creditable evidence of performance issues and Plaintiff was never put on a Performance Improvement Plan.

    a.    **ADS *463*,** *Precepts for Performance Standards Boards,* under Section 2, (G), *Information to Be Considered,* discusses that unsubstantiated poor performance should not be included in tenure or performance review (also see **ADS 463**, Precepts for Performance Standards Boards).

    b.    **ADS 464** Foreign Service Performance-Based Actions, Section 3.3 stipulates that performance issues be documented on a Performance Improvement Plan.

21.    Mr. Jarrett failed to mention in the complaint that the Agency also violated Federal law **Chapter 43, United States Code 5,** by terminating Plaintiff without due process.

    a.    **Section 4302, which** stipulates that agencies must establish unacceptable performance before placing an employee on a Performance Improvement Plan or removing them. This law requires agencies to demonstrate that an employee was performing unacceptable **before** initiating adverse action. **Section 4303**, which stipulates that Federal employees have the right to due process and proper procedure **before** an agency interferes with, or terminates their employment.

### Charge III

### Causal Link Between Negligently Handled Complaint and Case Outcome

22.    Mr. Jarrett's negligence and incompetence in the area of federal employment laws directly influenced the outcome of the case. If not for his mishandling of the case, Plaintiff would have prevailed in accordance to agency policy and federal employment laws in the context of discrimination, retaliation and wrongful discharge. Mr. Jarretts reframing of specific issues influenced the administrative judge's review, analysis and conclusions. Her ruling was upheld on

appeal to the Office of Federal Operations (OFO). During the appeal, the OFO referenced the same negligently prepared complaint document.

   a. In regards to the letter of admonishment, the AJ's analysis and conclusions state "... *the allegation that she was issued an inaccurate letter of admonishment, Complainant failed to establish a genuine dispute of fact that the Agency issued it to her without adequate reason... complainant failed to establish a genuine issue existed that the letter of admonishment was discriminatory in nature*" (Pg. 11 par. 2).

      i. Plaintiff testified that this was an issue of retaliation for protected EEO activity and not discrimination. Plaintiff provided documentary evidence that the admonishment was unwarranted (Sworn Statement 1, Issue 1, #68-72).

   b. In regards to the performance allegations and non-support of tenure, the AJ's analysis and conclusions state "*The Agency provided legitimate, non-discriminatory reasons for providing the documentation of Complainant's performance concerns. The Agency's policy (effective March 15, 2019) requires deficient performance to be clearly communicated between the rating official and the employee...Although the Agency did not provide a formal Performance Counseling memorandum or Performance Improvement Plan as mentioned in the policy, it identified Complainant's performance deficiencies and areas for improvement through emails, quarterly conversations, and Annual Evaluation Forms* (pg. 12, par 3).

      i. Mr. Jarrett failed to make the that the performance allegations documented by the supervisor in emails were all baseless and unfounded. Thus, the supervisor was never able to move forward with a Performance

   Improvement Plan as she intended. As Chapter 43 of U.S. Code Stipulates, agencies must establish poor performance before placing an employee on a Performance Improvement Plan (see Exhibit 2, #32).[2]

 c. In regards to false documentation of performance concerns, the AJ's analysis and conclusions state *"In addition, a separate performance board also highlighted Complainant's performance concerns. The POMB issued Complainant "C" rating, which provided notice to her that she could be involuntarily retired based on her relatively poor performance if the Performance Standards Board discovered no extenuating circumstances to extend her appointment* (Pg. 14, par 3).

  i. The Board requested to meet with Plaintiff regarding performance allegations. However, she was terminated before the meeting date. Mr. Jarrett did mention this policy in the complaint or argue that the agency was in violation of their own policy for terminating Plaintiff without allowing her to meet with the Board, which was a denial of due process (Sworn Statement 2, Issue 1, #32).[3]

 d. In regards to repayment of the travel ticket, the AJ's analysis and conclusions state *"...Complainant failed to establish a discriminatory motive in being pursued for repayment of her EVT travel expenses."* (Pg. 11, par. 1)

  i. Mr. Jarrett reframed this as retaliation in the combined complaint. Plaintiff testified that this was an act of retaliation for protected EEO activity and not discrimination (Sworn Statement 1, Issue 1, #21-24).

---

[2] Plaintiff's prior performance record was commendable.
[3] See above discussion on agency policy and federal laws that apply to this case.

Complaint, page. 11 of 13

e.     In regards to wrongful termination and tenure denial, the AJ's analysis and conclusions state *"With respect to Complainant's claim that the denial of tenure was discriminatory, she failed to relate any of the Agency's actions to her race and/or sex. Page 14, par 2…Complainant failed to demonstrate a genuine dispute of fact exists that the Agency's termination of her appointment was motivated by disparate treatment based on her African American race and/or sex* (Pg.14, par 4).

       i.     Plaintiff stated in her claim that her denial of tenure was wrongful termination, a denial of due process, and retaliation for EEO activity, which is a protected act under Title V of the Civil Rights Act. She did not testify that it was an act of discrimination. Mr. Jarrett omitted the facts surrounding when Plaintiff's unlawful termination when he prepared the combined complaint (Sworn Statement 3, # 25-28).

       ii.     Plaintiff was curtailed from her new assignment in Kabul Afghanistan two-days after filing her sworn statement by the senior male administrator named in the claim for sending the unwarranted admonishment. He then placed Plaintiff on administrative leave and she was officially terminated 30-days later (Sworn Statement 2, #16-19; Sworn Statement 3, # 25-28). There is no mention of this incident in the combined filed complaint.

f.     In regards to the information on Plaintiff's credit report, the AJ' analysis and conclusions state *"The Complainant failed to establish that the Agency's explanations for information appearing in her credit report were a pretext for unlawful discrimination* (Pg 14, par 5).

      i.    Plaintiff never claimed that this was discrimination, she stated, in her sworn statements, that this was an act of retaliation for protected EEO activity (Sworn Statement 2, Issue 1, #48; Sworn Statement 3, #38-43, 48, 54). Mr. Jarrett never mentioned that this was retaliation when he filed the complaint. This incidence occurred after Plaintiff was terminated. Therefore, Plaintiff could not have testified that this pretext for unlawful discrimination.

23. Mr. Jarrett, working under the direction of Alan Lescht was negligent when failed to provide Plaintiff with a reasonable level of care for her Title VII discrimination case. As a direct and proximate result of their negligence, Plaintiff sustained damages in the amount of $2 million in lost wages and benefits, compensatory damages, emotional distress and legal fees.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, hereby seeks judgement of and from the defendants in the amount of $ 2 million together with pre-judgement and post-judgement interests and all cost accrued.

Submitted: 11/27/23

Submitted by: *Janet Thomas* [signature]

### Certificate of Service

I the undersigned, hereby certify that the above was served on the entity identified on the date of the signature below by means indicated below.

**THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF WASHINGTON, DC**
333 Constitution Ave, N.W.
Washington, D.C. 20001

~~Via eCF~~
Complaint
Summons
Civil Cover Sheet

Date: 11/27/23      Signature: [signature]

Complaint, page. 13 of 13